IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARY SHANNON DRISCOLL,

    Plaintiff,

v.                                                                         Civ. No. 1:22-cv-00756-LF-JFR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and DANIEL NASH,

    Defendants.

**MEMORADUM OPINION AND ORDER**

THIS MATTER comes before the Court on defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion to Bifurcate and Stay, filed on May 1, 2023, which was fully briefed on May 30, 2023. Docs. 31, 34, 35, 36. Having reviewed the parties' submissions and the relevant law, and being otherwise fully advised, the Court finds the motion is not well taken and DENIES it.

**I.  Background**

Plaintiff Mary Shannon Driscoll was involved in an automobile accident on March 8, 2020. Doc. 1-1 at 2. Ms. Driscoll alleges that she was insured by State Farm with a policy that was in effect at the time of the accident. *Id*. Ms. Driscoll secured a settlement with the tortfeasor's insurance provider for policy limits in the amount of $25,000. *Id*. at 3. Following that settlement, Ms. Driscoll filed a claim with State Farm for underinsured motorist ("UIM") benefits under the policy. *Id*. Ms. Driscoll sent a demand to State Farm for the full UIM policy limits of $100,000.00. *Id*. Mr. Nash, the adjuster for State Farm, confirmed that Ms. Driscoll had available UIM coverage under the policy and sanctioned the settlement with the tortfeasor's insurance provider. *Id*. Mr. Nash also evaluated Ms. Driscoll's demand for policy limits. *Id*. at

3, 4.  Mr. Nash subsequently informed Ms. Driscoll that he reduced her medical bills "using the Medicare part B schedule as a guide to determine the reasonability of the charged medical bills." *Id*. at 4.  Mr. Nash stated that his "initial offer was 0.00," but that he was willing to negotiate further. *Id*.  At Ms. Driscoll's prompting, Mr. Nash offered $1,000. *Id*.  After Ms. Driscoll expressed her concern that State Farm was engaging in bad faith practices, Mr. Nash offered Ms. Driscoll $2,000 for her claim. *Id*.  Ms. Driscoll rejected that offer. *Id*.

In Count I of her complaint, Ms. Driscoll alleges that State Farm breached the insurance contract by not providing coverage under the terms of the policy. *Id*. at 5.  In Count II, Ms. Driscoll alleges a breach of the covenant of good faith and fair dealing "by refusing to tender the full benefits of the contract that Plaintiff is entitled to." *Id*. at 6.  In Count III, Ms. Driscoll alleges that State Farm acted in bad when it refused to pay her claim for UIM benefits under the terms of the policy and "cited to unfounded and frivolous reasons for the denial." *Id*.  In Count IV, Ms. Driscoll alleges State Farm violated the New Mexico Insurance Code by knowingly and willfully engaging in prohibited practices under the code. *Id*. at 7.  In Count V, Ms. Driscoll alleges a violation of the New Mexico Unfair Trade Practices Act for "knowingly and willingly ma[king] false or misleading representations in connection with the sale of its insurance services in the regular course of its commerce which tended to or did deceive and mislead Plaintiff, including the failure to deliver the quality of insurance services contracted for," and for an "unconscionable trade practice." *Id*. at 8.  In Count VI, Ms. Driscoll alleges that she should be awarded punitive damages for defendants' willful and intentional misconduct. *Id*.  Ms. Driscoll seeks actual damages, punitive damages, statutory damages, pre-judgment and post-judgment interest, and attorney's fees and costs. *Id.* at 9.

In its motion, State Farm moves the Court to bifurcate the UIM claim from the extra-contractual claims and to stay the extra-contractual claims.  State Farm contends that

"[b]ifurcation is appropriate in this case because resolution of the UIM claim should be a condition precedent to Plaintiff bring a bad faith [claim]." Doc. 31 at 4. State Farm asserts that because there is a dispute over the value of Ms. Driscoll's damages and to what extent benefits are owed to her, that they "have a right to first litigate the dispute over the value before any extra-contractual claims are brought." *Id.* State Farm contends that the resolution of Ms. Driscoll's UIM claim may potentially render her extra-contractual claims moot. *Id.* State Farm argues that discovery into any issue pertaining to the extra-contractual claims should be stayed. *Id.* State Farm further argues that "[s]imultaneous litigation of the contractual and extra-contractual claims would not promote judicial economy and would be inherently prejudicial to State Farm." *Id.*

State Farm asserts that failure to bifurcate the extra-contractual claims would prejudice it because the evidence on the two issues is completely distinct and unrelated, and a jury's consideration of the evidence of Ms. Driscoll's extra-contractual claims during the trial of her damages claims would only result in confusion and unduly influence the jury's decision regarding whether Ms. Driscoll is entitled to damages at all. *Id.* at 6. State Farm requests that the court bifurcate Ms. Driscoll's UIM claims from her extra-contractual claims and that the extra-contractual claims be stayed, including discovery, pending a resolution of Ms. Driscoll's UIM claim by a jury. *Id.* at 7. In its reply, State Farm asks that if the Court is disinclined to bifurcate and stay discovery on the extra-contractual claims, that the Court bifurcate the trial so that the jury would hear the damages claim first, and if necessary, the same jury would hear the extra-contractual claims. Doc. 35 at 6.

Ms. Driscoll counters that the adjudication of her UIM damages is not necessary to proceed with her extra-contractual claims because there is no dispute regarding liability. Doc. 34 at 6–8. She asserts that because there is no dispute about the underlying liability of the

3

tortfeasor, bifurcation is not necessary, and generally is denied under these circumstances in this district. *Id*. at 7. Ms. Driscoll further argues that because her extra-contractual claims are not solely rooted in State Farm's refusal to pay the claim in full, bifurcation is not in the interest of judicial economy and State Farm would not be prejudiced. *Id*. at 8–13. Finally, Ms. Driscoll contends that State Farm's conduct warrants sanctions for its failure to carry out discovery in good faith, and she asserts that State Farm filed this motion in an effort to delay the proceedings. *Id*. at 13–34. Ms. Driscoll asks the court for sanctions and for attorney's fees and costs associated with filing her response to the motion. *Id*. at 15.

## II.  Legal Standard

### A.  Bifurcation of Claims

Federal Rule of Civil Procedure 42(b) allows that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Bifurcation under Rule 42(b) is "appropriate 'if such interests favor separation of issues and the issues are clearly separable,'" *Ortiz v. Safeco Ins. Co. of Am.*, 207 F. Supp. 3d 1216, 1217–18 (D.N.M. Sept. 13, 2016) (quoting *Palace Exploration Co. v. Petroleum Dev. Co.*, 316 F.3d 1110, 1119 (10th Cir. 2003)), such as "when the resolution of one claim may eliminate the need to adjudicate one or more other claims," *id*. at 1218 (citation omitted). However, bifurcation is "inappropriate when it will not appreciably shorten the trial or [a]ffect the evidence offered by the parties because claims are inextricably linked." *F.D.I.C. v. Refco Group, Ltd.*, 184 F.R.D. 623, 629 (D. Colo. 1999).

A district court's discretion in deciding whether to sever issues for trial is "broad" and "considerable." *United States ex rel. Bahrani v. ConAgra, Inc.*, 624 F.3d 1275, 1283 (10th Cir. 2010) (quoting *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1285 (10th Cir. 1999)); *Angelo v. Armstrong World Indus.*, 11 F.3d 957, 964 (10th Cir. 1993). "Bifurcation is not an abuse of

discretion if such interests favor separation of issues and the issues are clearly separable." *Angelo*, 11 F.3d at 964.  On the other hand, bifurcation "is an abuse of discretion if it is unfair or prejudicial to a party." *Ortiz*, 207 F. Supp. 3d at 1218 (citing *Angelo*, 11 F.3d at 964). Moreover, bifurcation is to be decided "on a case-by-case basis" and should not be regarded as "routine." *Marshall v. Overhead Door Corp.*, 131 F.R.D. 94, 97–98 (E.D. Pa. 1990).  The party seeking bifurcation bears the burden of proving that it is proper "in light of the general principle that a single trial tends to lessen the delay, expense, and inconvenience." *Belisle v. BNSF Ry. Co.*, 697 F. Supp. 2d 1233, 1250 (D. Kan. 2010).

"The Court also has broad discretion in managing its docket, including staying portions of discovery." *Prescott v. Bristol W. Ins. Co.*, No. 18cv0756 KBM/JHR, 2019 WL 95929, at *2 (D.N.M. Jan. 3, 2019) (unpublished) (internal citation omitted).  "Whether to stay discovery depends to a substantial degree on the facts and procedural progress of each individual case." *Id*. (citations omitted).  "The party seeking a stay generally faces a difficult burden, and must make a strong showing of necessity when seeking relief that would delay the court proceeding." *Id.* (internal citation and quotations omitted).

    B. <u>Sanctions for Discovery Violations</u>

Rule 37 governs the use of sanctions against parties for discovery abuses.  The rule permits a court to impose sanctions against a party who provides evasive or incomplete disclosures, answers, or responses or fails to supplement an earlier response as required by Rule 26.  FED. R. CIV. P. 37(a)(4), (c).

In order to impose sanctions under Rule 37(c), "a district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).  The court should weigh the following factors in determining the appropriate

sanction: (1) the prejudice or surprise to the party; (2) the ability of the party to cure the prejudice; and (3) the moving party's bad faith. *Id*. (citations omitted). A court has broad discretion in fashioning the appropriate sanction under Rule 37(c); this includes awarding costs and fees and informing the jury of the party's failure to properly disclose information. FED. R. CIV. P. 37(c)(1).

### III. Discussion

#### A. Ms. Driscoll's Extra-Contractual Claims are Not Based Solely on the Defendant's Failure to Pay the Claim in Full.

State Farm argues that Ms. Driscoll must prove that she is legally entitled to UIM benefits before State Farm can be held liable for bad faith. Doc. 31 at 2–6. The Court is not persuaded that bifurcation and staying discovery on the extra-contractual issues is appropriate in this case.

First, Ms. Driscoll is correct that "judges in this district have denied requests to bifurcate when the parties dispute only the value of damages, not the underlying liability of the tortfeasor." Doc. 34 at 7 (citing *Prescott*, 2019 WL 95929, at *2). In *Prescott*, the court pointed out that judges generally deny bifurcation when the parties do not dispute underlying liability but only the value of plaintiff's damages. *Prescott*, 2019 WL 95929, at *2; *see also Martinez v. State Farm Mutual Automotive Insurance Co.*, No. 16cv1029 WJ/LF, Doc. 27 at 6 (D.N.M. March 27, 2017) (unpublished) (finding bifurcation inappropriate where underlying negligence of plaintiff was not at issue). On the other hand, bifurcation often is granted in cases where the underlying liability is in dispute. *Prescott,* 2019 WL 95929, at *2 (comparing cases).

In this case, it appears that while the value of damages is in dispute, the underlying liability is not. In its reply, State Farm argues that "a genuine dispute exists between the parties as to the nature, extent, and value of Plaintiff's damages, and whether, and to what extent the

6

collision caused Plaintiff's damages." Doc. 35 at 5.  What is absent, however, is any argument that State Farm believes—or has any evidence to support the assertion—that Ms. Driscoll is at fault for the accident.  The underlying liability, therefore, is not at issue.

State Farm relies heavily on *Ortiz* and *Aragon v. Allstate Ins. Co.*, 185 F. Supp. 3d 1281 (D.N.M. 2016) in support of its argument that bifurcation is required.  "*Aragon* and *Ortiz* 'stand for the narrow proposition that to recover on a bad faith failure to pay claim, plaintiffs must first prove they are legally entitled to recover [UIM] damages.'" *Prescott*, 2019 WL 95929, at *3 (quoting *Buccheri v. GEICO Ins. Co.*, No. 17cv0490 LF/KK, 2017 WL 3575486, at *3 (D.N.M. Aug. 17, 2017) (unpublished)).  In other words—and as Ms. Driscoll points out—these cases are distinguishable because "the plaintiffs and the defendant insurance companies [in *Ortiz* and *Aragon*] disagreed about whether the plaintiffs were entitled to UM/UIM coverage at all."  Doc. 34 at 8 (citing *Montes v. State Farm Fire & Cas. Co.*, No. 22cv0536 RB/JHR, 2023 WL 2043469, at *2 (D.N.M. Feb. 16, 2023) (unpublished)).  Because State Farm is disputing the value of Ms. Driscoll's claim, not whether she is entitled to UIM benefits at all,[1] *Ortiz* and *Aragon* are inapplicable under the circumstances of this case.

Second, resolution of the contract claim in State Farm's favor is not necessarily determinative of the extra-contractual claims.  "An insurer in New Mexico can act in bad faith in its handling of a claim 'for reasons other than its refusal to pay' a claim in full."  *Willis v. Government Employees Ins. Co.*, No. 13cv0280 KG/KK, 2015 WL 11181339, at *3 (D.N.M. 2015) (unpublished) (quoting *O'Neel v. USAA Ins. Co.*, 2002-NMCA-028, ¶ 7, 131 N.M. 630, 633, 41 P.3d 356, 359); *see also Montes*, 2023 WL 2043469, at *2.  A plaintiff may prove bad faith by showing that the insurance company acted unreasonably under the circumstances to

---

[1] Of course, Ms. Driscoll still must prove that her damages exceeded the $25,000 she received from the tortfeasor.

conduct a timely and fair investigation or evaluation of the claim, or it unreasonably delayed its notification to the policyholder that the claim would be paid or denied, or it failed to timely investigate or evaluate or pay a claim.  *See* NMRA, Civ. UJI 13-1702; *Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶ 3, 135 N.M. 106, 109, 85 P.3d 230, 234.  In *Willis*, the court denied GEICO's motion to bifurcate, reasoning:

> Plaintiffs' bad faith claims concerning quality or quantity of services, untimeliness, and dishonesty are for "reasons other than [GEICO's] refusal to pay" Plaintiffs' claim in full.  Those bad faith claims are distinct and independent from Plaintiffs' claim that GEICO refused to pay Plaintiffs' claim in full, the basis for Plaintiffs' contract claims.  Accordingly, the bad faith claims are not contingent on the contract claims.  GEICO has, therefore, failed to demonstrate that bifurcation is warranted for that reason.

*Willis*, 2015 WL 11181339, at *3; *see also Martinez*, Civ. No. 16cv1029 WJ/LF, Doc. 27 at 6 (finding bifurcation inappropriate where some of plaintiff's extra-contractual claims arose for reasons other than insurer's failure to pay); *Montes,* 2023 WL 2043469, at *2 (same).

Here, Ms. Driscoll's extracontractual claims are based on more than the allegation that State Farm failed to pay her claim in full.  She also claims that State Farm violated the insurance code by "failing to acknowledge and act reasonably promptly upon communications with respect to Plaintiff's claim; failing to timely and fairly investigate Plaintiff's claim; failing to timely evaluate Plaintiff's claim; and failing to promptly provide Plaintiff a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of her claim or for the offer of a compromise settlement."  Doc. 34 at 9–10; *see also* Doc. 1-1 at 7–8.  Thus, a determination that State Farm breached the contract by underpaying the claim is not a necessary precedent to proving all of the extra-contractual claims.  *See Willis*, 2015 WL 11181339, at *3; *see also Sanchez v. Safeco Ins. Co. of Am.*, No. 14cv0926 MV/GBW, 2015 WL 12832335, at *1

(D.N.M. Sept. 11, 2015) (unpublished).  Because some of Ms. Driscoll's extra-contractual claims are distinct and independent from its breach of contract claim, bifurcation is not appropriate.[2]

    B. <u>Bifurcation is not Necessary to Prevent Confusion and Unfair Prejudice</u>.

The Court also is not persuaded that bifurcation is more efficient or necessary to prevent jury confusion or unfair prejudice to State Farm at trial.  Bifurcation under Rule 42(b) is not appropriate if the evidence to be presented on the various claims is inextricably linked. *Buccheri*, 2017 WL 3575486, at *4.  State Farm argues that the issues are unrelated and that "the jury's consideration of the testimony on Plaintiff's extra-contractual claims during the trial of their damages claims can only result in confusion or improperly, and unnecessarily, influence the jury's decision regarding whether Plaintiff is entitled to damages at all."  Doc. 31 at 6.  However, presenting the coverage claim will entail presenting evidence regarding the terms of the contract, and whether State Farm breached the contract by undervaluing Ms. Driscoll's UIM claim.  *See Huss v. American Family Ins. Co.*, Civ. No. 13cv0330/0332 WJ/RHS, 2014 WL 12465421, at *3 (D.N.M. Jan. 10, 2014) (unpublished).  "This evidence is also relevant to the unfair trade practices and bad faith claims."  *Id.*  Presumably, many of the same witnesses will testify on behalf of plaintiffs and defendants for both the breach of contract and extra-contractual claims. Bifurcation would waste time and judicial resources and would require duplication of effort.  The

---

[2] Even if the claims were dependent, bifurcation is not mandated.  "[T]he fact that a determination of the coverage issue would be dispositive of the remaining claims does not mandate bifurcation."  *Christy v. Travelers Property and Casualty Insurance Co.*, No. 13cv0281 WJ/LFG, Doc. 21 at 4 (D.N.M. Aug. 29, 2013) (unpublished).  "Even where claims are dependent on one another, bifurcation is not appropriate where 'both claims rely on the same factual underpinnings and are therefore not separable.'"  *Id.* (citing *Crespin v. State Farm*, No. 10cv0881 MCA/WDS, Doc. 51 at 16 (D.N.M. July 12, 2011) (unpublished) (holding that bifurcation was inappropriate even though the bad faith claim was dependent on the contract claim)).

contractual and extra-contractual claims are sufficiently intertwined to permit simultaneous discovery and, ultimately, a simultaneous trial of the claims.

Allowing the claims to proceed simultaneously does not create a substantial risk of juror confusion. As the Honorable District Judge Kenneth Gonzales has observed, "Jurors are often asked to comprehend issues in civil litigation that are considerably more complex than the issues in this case. Sufficiently clear jury instructions, including limiting instructions, and clear arguments by counsel will enable jurors to understand the different sets of issues presented and thereby, avoid any confusion or prejudice." *Willis*, 2015 WL 11181339, at *4. Further, the Court must balance any potential prejudice to State Farm against the prejudice of the delay that bifurcation would cause to Ms. Driscoll, and the inconvenience to the Court. Balancing these equities, bifurcation is not appropriate in this case.

C. Sanctions for Discovery Abuses and Causing Delay

Ms. Driscoll argues that State Farm's motion "does not merely request improper relief; it also serves [as] a mechanism to cause undue delay in a matter that cannot shoulder any further interruption." Doc. 34 at 13. Ms. Driscoll contends that while State Farm informed Ms. Driscoll that it intended to file a motion to bifurcate, it waited two months to file its motion, served the motion with its responses to Ms. Driscoll's discovery requests, and used the bifurcation issue as the basis for numerous objections to the discovery requests. Ms. Driscoll served State Farm with written discovery requests on February 24, 2023, and State Farm sought extensions through May of 2023. Doc. 34 at 4–5. When State Farm provided its responses, it objected to Ms. Driscoll's written discovery on the grounds that it had filed a motion to bifurcate and stay Ms. Driscoll's extra-contractual claims. *Id.* at 5, 13.

Ms. Driscoll complains that State Farm should have filed a motion for a protective order if it intended to rely on its motion to bifurcate and stay as a basis for not responding to certain

discovery requests.  *See* Doc. 34 at 14.  State Farm argues that filing a motion to stay discovery on the extra-contractual claims was more appropriate than seeking a protective order under the circumstances.  Doc. 35 at 7.  Further State Farm stated in its discovery responses that if its motion to bifurcate and stay were denied, "it would timely supplement its Answers and Responses accordingly."  Doc. 35 at 8.  I do not find that State Farm acted in bad faith by filing its motion, and any prejudice to Ms. Driscoll can be cured by prompt supplementation.  I therefore decline to award sanctions.

### IV.   Conclusion

State Farm has not convinced the Court that bifurcation of the trial in this case under Rule 42(b) is clearly necessary.  Without bifurcation of the trial, there is no need to stay discovery on the extra-contractual claims.

IT IS THEREFORE ORDERED that State Farm's Motion to Bifurcate and Stay (Doc. 31) is DENIED.

IT IS FURTHER ORDERED that State Farm will fully respond to any discovery request that was objected to on the grounds that it had filed a motion to bifurcate and stay no later than Wednesday, July 5, 2023.  Ms. Driscoll's request for attorney's fees and costs is DENIED.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent.